**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOSEPH O'NEAL,**<br>***Plaintiff,*** | § | |
| **v.** | § | **Case No. 4:25-cv-555**<br>**JURY DEMANDED** |
| **DISA GLOBAL SOLUTIONS, INC., and UNIVERSITY MRO, LLC d/b/a UNIVERSITY SERVICES and UNIVERSITY SERVICES – MRO,**<br>***Defendants.*** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, Plaintiff, **JOSEPH O'NEAL** (hereinafter "Mr. O'Neal" or "Plaintiff"), in the above-referenced matter, complaining of and about Defendants, **DISA GLOBAL SOLUTIONS, INC.** (hereinafter "DISA" or "Defendant"), for causes of action files this Complaint, showing to the Court the following:

## I. PARTIES AND SERVICE

1. Plaintiff, **JOSEPH O'NEAL**, is an individual residing in Louisiana at the time the cause of actions accrued.

2. Defendant, **DISA GLOBAL SOLUTIONS, INC**. ("DISA"), is a Delaware Corporation doing business in Texas with its principal place of business at 12600 Northborough Dr. Houston, Texas 77067, and it may receive service of process by and through CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3. Defendant, **UNIVERSITY MRO, LLC d/b/a UNIVERSITY SERVICES and UNIVERSITY SERVICES - MRO** ("University Services"), is a Delaware Corporation doing business in Texas, with its principal place of business at 12600 Northborough Dr. Houston, Texas 77067 and it may receive service of process by and through The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction of this action as this case arises under 15 U.S.C. § 1681 and the damages are within the jurisdiction of this court and will continue to increase as this case proceeds to trial. Venue is proper in the Southern District of Texas – Houston Division, pursuant to the Federal Rules of Civil Procedure, as all or a substantial part of the events or omissions giving rise to this claim occurred in this this District.

## III. NATURE OF ACTION

5. This is an action brought pursuant to 15 U.S.C. § 1681 to correct and recover for Defendants' unlawful reporting practices related to a false positive hair follicle drug test that have an adverse effect on upon Plaintiff's ability to obtain employment.

6. Defendants' use of the hair follicle test is unlawful because, among other reasons, it is used despite the availability of alternative testing methods and procedures that would have less disparate, adverse, and discriminatory impact and higher accuracy (with less false positive tests).

7. Scientific studies demonstrate that the procedures used by the Defendants to test hair samples for the presence of illegal drugs are flawed, imprecise, arbitrary, unreliable, and inherently biased against people of color and Defendants have conspired to adversely affect Plaintiff and similarly situated employees.

## IV. FACTS

**DISA's POLICIES and KNOWLEDGE**

8. DISA advertises that its "Drug Testing combines technology and screening innovations to deliver employee information quickly and accurately. DISA specializes in giving employers the tools and information they need to make the most informed hiring decisions possible. DISA's provides information to employers like Total Safety and Turner Industries Group, LLC, in making employment retention, hiring and termination decisions based upon drug test reports created by DISA.

9. DISA advertises that "With DISA, employers can manage all their hiring and employee screening requirements under one comprehensive service umbrella. Regardless of their industry or unique policy requirements, DISA' s solutions make it easier for employers to hire the right people for the job and to manage their business more efficiently."

10. DISA, however, has no policy to deal with errors in sample collection or when a sample might have been contaminated. DISA will not allow for a new sample to be taken, instead will only allow for retesting of the same tainted sample at the same lab: (https://disaglobalsolutions.formstack.com/forms/rtd_reanalysis_request).

11. Additionally, DISA states that an employee who tests positive must either be terminated immediately or, if a company allows it, to be given a return-to-duty process administered by none other than DISA: If one of your employees fails a drug screen and they are in a safety-sensitive position, they must be removed from duty immediately. If the employee is not in a safety-sensitive position, then disciplinary actions can vary based on company policy. Some employers offer Return-to-Duty testing which is given after an employee has violated a company's drug and alcohol policy and gives the employee an opportunity to get healthy and return to work. Before returning

to the company drug testing program, the employee must follow through with the Return-to-Duty process, which can vary by company and industry specifications ... Employees in a DISA mandated drug and alcohol testing program that are interested in going through DISA's 'return-to-duty' process can visit https://disa.com/rtd." The Return-to-Duty testing and classes provided by DISA require employees to admit "drug use" even if the test resulted in a false positive.

12. DISA does not conduct the testing itself, instead it contracts out to third-party specimen collection sites and laboratories to do that work. With the Plaintiff's testing, DISA instructed him to go to a collection facility for the taking of the hair follicle sample. DISA, in tum, uses PSYCHEMEDICS as the laboratory to actually test the hair follicle taken.

**UNIVERSITY SERVICES ALLEGED SERVICES – THIRD-PARTY AFFILIATE OF DISA**

13. According to University Services:

> "University Services provides Medical Review Officer (MRO) services for drug testing results. Our MROs are licensed physicians, certified as MROs. As the MRO, we act as a gatekeeper in the drug testing process, advocating for the integrity of drug testing programs. We receive results from the lab, review and interpret the lab results, explore valid medical explanations for non-negative results by interviewing donors, verify the results and report the final result determinations to clients (employers, third-party administrators (TPAs) and other agencies such as correction facilities and court-ordered testing). University Services provides expert MRO services for clients nationwide for both regulated and nonregulated testing programs. We have a team of 12 MROs that work with the MRO staff to ensure quality result reporting with the best possible tum-around time."

14. Interestingly, third-parties administers the entire drug testing process and DISA deals with the administration of the tests and picks the lab, is also located at the same address in Texas as University Services that verifies and allegedly double-checks the results for accuracy.

15. Of course, although advertising it "ensures a quality result" fails to do any of the actual verification when, in a circumstance like the one here, a clearly false positive results in an employee termination.

16. Mr. O'Neal has faced ongoing challenges with drug testing, particularly hair tests, which have shown false positive results. In 2016, after Ethos Energy ("Ethos") eliminated its non-union side, Mr. O'Neal applied to Sulzer Mechanical, passing physical tests and drug urine tests but strangely failing two hair tests. This resulted in job loss and mandatory random testing for three years. Mr. O'Neal regained his union book and continued working for Ethos, frequently undergoing urine tests due to a zero-tolerance policy on the Gulf Coast, requiring work in northern states.

17. In January 2020, DISA requested Mr. O'Neal to undergo a hair test for a position with Ethos. Despite previous unexplained test failures, he was reassured by Dispatcher Marc Norred and Regional Safety Manager Brian Johnson that his employment would not be jeopardized. Unfortunately, the test returned a positive result, leading to further complications. The Regional Safety Manager, confident in Mr. O'Neal's sobriety, personally contacted the Medical Review Officer (MRO) to request a retest. Regrettably, the retest also failed.

18. On January 3, 2020, Mr. O'Neal accepted a five-year position with Universal Plant Services ("UPS") in St. Croix. After completing all pre-job procedures, he was informed that he could not commence work due to a DISA testing red flag. This resulted in Mr. O'Neal spending seven days on the island before being flown back, causing significant disruption, anxiety and distress.

19. Despite consistently passing all required urine tests, Mr. O'Neal has been unjustly red-flagged by DISA, a designation that has significantly hindered his ability to secure employment at facilities requiring DISA clearance.

20. This unwarranted red-flagging has not only tarnished Mr. O'Neal's professional reputation but has also forced him to seek multiple jobs across various trades to sustain his livelihood. The plaintiff seeks the court's intervention to rectify this situation, clear his name, and address the substantial harm inflicted upon his financial stability and professional standing. We respectfully

request the court to consider the unjust nature of the red-flagging and its detrimental impact on Mr. O'Neal's career and reputation.

21. Following the last failed test, the Medical Review Officer (MRO) suggested that Mr. O'Neal should “change his social circle” if he was clean. This statement was not only unprofessional but also derogatory and dismissive, implying guilt without evidence and casting unwarranted aspersions on Mr. O'Neal’s character and integrity. Such a remark exacerbated the situation, leading to a heated exchange, and underscores the prejudicial treatment Mr. O'Neal has faced throughout this process. The MRO's comment reflects a bias that further tarnishes Mr. O'Neal’s reputation and undermines the fairness of the proceedings.

22. During this period, Mr. O'Neal sustained a severe finger injury, refused pain medication, and returned to work on the same day. This remarkable display of resilience underscores not only his commitment to a drug-free life, but also his unwavering work ethic. Despite the physical pain he endured, Mr. O'Neal prioritized his professional responsibilities, demonstrating a level of dedication and integrity that should be acknowledged and respected. His actions further exemplify his seriousness in maintaining his sobriety and his commitment to his livelihood.

23. Plaintiff alleges that the Defendants engaged in fraud, tortious interference, misrepresentation, and conspiracy, resulting in reputational harm. Plaintiff asserts that the Defendants’ actions were negligent and in bad faith, leading to significant personal and professional damages.

24. Defendants necessarily knew that the scientific veracity of hair follicle tests for illegal drugs is in doubt because of concerns that hair tests deliver a higher rate of false positives for individuals with higher concentrations of melanin in their hair because melanin acts as a major binding site.

25. For the purposes of compliance with federal regulations, including those promulgated by the Department of Transportation, hair sample tests have not been approved by the United States Department of Health and Human Services as a part of any regimen of drug testing for illegal drugs.

26. For the purposes of compliance with federal regulations, urinalysis is the only method of testing for illegal drugs approved by the United States Department of Health and Human Services.

27. Defendants were under no legal obligation to offer hair sample tests to third party employers wishing to retain their services for the purposes of screening employees for illegal drugs. A urinalysis was, and indeed, ought to have been, sufficient in making a determination regarding any illegal drug use by Plaintiff.

28. Due to the Plaintiff's loss of employment as a result of the false positive hair sample drug test and refusal to remedy the known false positive, has caused significant harm, including emotional distress, mental anguish, and potential relapse into alcoholism. This situation has been life-altering, leading to severe mental, physical, and emotional distress. Plaintiff has suffered lost compensation and benefits and has also suffered compensatory damages.

29. DISA is a "consumer reporting agency" as defined by 15 U.S.C. 1681(a) because it is in the practice of assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties. The consumer report supplied by DISA contained information which was a matter of public record and of the type of information that was likely to have an adverse effect upon Plaintiff's ability to obtain employment generally, and specifically with Total Safety, Turner Industries Group, LLC, and many employers who contract with DISA.

30. DISA contracts with other Defendants to supply "consumer reports" as defined by 15 U.S.C. § 1681a(d) for employment purposes. A "consumer report" means any written, oral, or

other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (B) employment purposes. DISA reports are deemed "consumer reports" as defined by 15 U.S.C. §1681(a)(d)(B) because they are written reports of information bearing on Plaintiff's character, general reputation, and personal characteristics.

31. Defendant has been reporting, and did here report, derogatory and inaccurate statements and information relating to Plaintiff to third parties ("inaccurate information"). DISA relies information from third-party testing sites to produce its report that the hair follicle test was and their reports were not based upon their experiences in testing the sample, but upon any outside information from third-parties. DISA sends employees to third party sites for testing and reports the results from the third-party test results therefore, the reports are not governed by the exclusion under § 1681a(d)(A) which requires that excluded reports contain "solely" information about "transactions or experiences between the consumer and the person making the report."

32. The inaccurate information includes, but is not limited to, false positive drug test results from an unreliable hair follicle test, which DISA failed to maintain strict procedures to assure maximum possible accuracy. The inaccurate information grossly disparages the Plaintiff and portrays him as a methamphetamine user, which he is not, and evidence will demonstrate. There is perhaps no greater error that a consumer reporting agency can make because it continues to adversely affect Plaintiff's ability to find employment with DISA holding such a large market.

33. In creating and furnishing Plaintiff's consumer report, DISA failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported about the

Plaintiff. DISA's consumer report consists of its third-party information gathered from outside sources, like University MRO and Psychemedics lab.

34. Defendant sold Total Safety, Turner Industries Group, LLC, and many of Plaintiff's prospective employers a consumer report that contained the inaccurate information. Plaintiff was subsequently terminated from Total Safety, and Plaintiff was informed that his offer was revoked by Turner Industries Group, LLC because of the inclusion of the inaccurate drug test information on Defendant's consumer report, that the inaccurate information was a substantial factor for the denial.

35. The Plaintiff did not become aware of the full extent of the false positives and the unlawful actions committed by Defendant until recently. It was only when peers began to comment on their own experiences of suffering from the same problems that the full scope of the Defendant's conduct came to light. As more and more individuals came forward with similar stories of wrongful red-flagging, the Plaintiff realized the reality of the issues.

36. As of result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost employment opportunities, harm to reputation, and emotional distress, including humiliation and embarrassment.

37. At all times pertinent hereto, Defendants were acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

38. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## V. CAUSES OF ACTION

**<u>COUNT 1 – VIOLATIONS OF THE FCRA</u>**
**(Against Defendant DISA)**

39. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

40. At all times pertinent hereto, Defendant DISA is a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f)."

41. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) because Plaintiff is an individual.

42. At all times pertinent hereto, the above-mentioned drug test reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d)(1)(B) because DISA's reports ar written communication bearing information on a consumers, character, general reputation, or personal characteristics.

43. DISA is a "consumer reporting agency" as defined by 15 U.S.C. 1681(a) because it is in the practice of assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties. The consumer report supplied by DISA contained information which was a matter of public record and of the type of information that was likely to have an adverse effect upon Plaintiff's ability to obtain employment generally, and specifically with Total Safety, Turner Industries Group, LLC, and many employers who contract with DISA.

44. Pursuant to 15 U.S.C. § 1681(n) and 15 U.S.C. § 1681(o), Defendant DISA is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § 1681e(b), which states:

> **(b) Accuracy of report**: Whenever a consumer reporting agency prepares a consumer report it shall <u>follow reasonable procedures to assure maximum possible</u>

accuracy of the information concerning the individual about whom the report relates.

45. It is well known that hair follicle drug test are the **least** accurate drug test administered and generally produces more false positive test results than any other testing, including urinalysis testing.

46. The conduct of Defendant DISA was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

47. Generally, the FCRA provides a private right of action against any person who negligently or willfully fails to comply with the statute. *See Id.* §§ 1681n, 1681o. "To assert a violation of the FCRA, a plaintiff must allege (1) that there was a 'consumer report,' (2) that defendant used or obtained the report (3) without a permissible purpose, and (4) that defendant acted negligently or willfully." *See Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017).

48. DISA released a consumer report of information regarding Plaintiff's alleged drug use and Defendant used that information for employment purposes, and that he was not hired or terminated by Defendants because of the false positive hair follicle test.

49. Under § 1681b(b)(2), "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a

consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A).

50. Section 1681b(b)(3) states, in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under the FCRA…

51. Section 1681m(a) provides that "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, " the person shall notify the consumer that an adverse decision was made as a result of the report and must provide, among other things, the contact information of the consumer reporting agency and the right to dispute the accuracy or completeness of the report. *Id.* § 1681m(a). Under the FCRA, an "adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *Id.* § 1681a(k)(1)(B)(ii).

52. Plaintiff asserts it suffered damages Section 15 U.S.C. §1681(n) given that Defendant DISA willfully prepared consumer reports without following or creating reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. DISA prepared consumer reports with knowledge or reckless disregard to the truth that the hair follicle tests repeatedly produced more false positive drug tests and its consumer reports were based on procedures to assure maximum possible accuracy, yet DISA continued to

prepare reports from third-parties that employees, like Plaintiff, tested positive, when the result was actually a "false positive."

53. Plaintiff asserts it suffered damages Section 15 U.S.C. §1681(o) given that Defendant DISA negligently prepared consumer reports without following or creating reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. DISA prepared consumer reports with negligently when it should have known the hair follicle tests repeatedly produced more false positive drug test and its consumer reports were based on procedures to assure maximum possible accuracy, yet DISA continued to prepare reports from third-parties that employees, like Plaintiff, tested positive, when the result was actually a "false positive.

**COUNT 2 – BREACH OF RESTATEMENT SECOND OF TORTS § 552**
**(Against Defendant DISA and Defendant University MRO)**

54. Defendants DISA Global Solutions, Inc. and University MRO, LLC provided drug testing information to Plaintiff's employer, Turner Industries Group, LLC.

55. The information provided was false, specifically the positive drug test results, which were inaccurate and misleading.

56. Defendants failed to exercise reasonable care or competence in obtaining and communicating the drug test results, knowing the critical impact on Plaintiff's employment.

57. Plaintiff and his employer justifiably relied on the accuracy of the information provided by Defendants.

58. As a result of the false information, Plaintiff suffered economic loss, including the loss of employment opportunities and damage to his personal and professional reputation.

59. The breach of duty by Defendants directly caused Plaintiff's damages.

60. Plaintiff seeks compensatory damages, attorney's fees, and any other relief deemed appropriate by the court.

**COUNT 3 – DEFAMATION**
**(Against Defendant DISA)**

61. Defendant DISA Global Solutions, Inc. published false statements regarding Plaintiff's drug test results, indicating a positive result for methamphetamines.

62. These false statements were communicated to third parties, including Plaintiff's employer, Turner Industries Group, LLC, and entered into DISA's national drug testing database.

63. Defendant acted negligently in failing to verify the accuracy of the drug test results before publication.

64. The false statements harmed Plaintiff's reputation, leading to the loss of employment opportunities, red flagging, and “black listing” in the industry.

65. Plaintiff suffered damages, including lost employment opportunities, emotional distress, and financial losses.

66. Plaintiff seeks compensatory and punitive damages, attorney's fees, and any other relief deemed appropriate by the court.

## VI. JURY DEMAND

67. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## VII. PRAYER

68. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. All damages to which Plaintiff may be entitled pursuant to this Amended Petition, including backpay and front pay;

b. Compensatory damages, including, but not limited to mental anguish;

c. Punitive damages;

d. Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of Court; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Petition or by any proper amendments thereto.

Respectfully Submitted,

kennard law P.C.

**Alfonso Kennard Jr.**
Texas Bar No.: 24036888
Alfonso.Kennard@kennardlaw.com
**Eddie Hodges, Jr**.
Texas Bar No. 24116523
eddie.hodges@kennardlaw.com
filings@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston Texas 77056
(713) 742 -0900 (main)
(832) 558 -9412 (facsimile)
(832) 558-6670 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**